**UNITED STATES of America,
Plaintiff,**

v.

**Franklin MÉNDEZ–CARRERO; Nelson Hernández–Ruiz; and Edwin Nieves–Concepción, Defendants.**

**No. Crim. 01–735(JAF).**

United States District Court,
D. Puerto Rico.

April 16, 2002.

Lydia Lizarribar-Buxo, Hato Rey, PR, for Nelson Hernandez-Ruiz.

Ivan Vega-Lassalle, Hatillo, PR, for Edwin Nieves-Concepcion.

Joseph C. Laws, Federal Public Defenders Office, San Juan, PR, Iris Martinez-Peta, Camuy, PR, Ivan Vega-Lassalle, Hatillo, PR, for Franklin Mendez-Carrero.

Michelle Morales, U.S. Atty's Office, San Juan, PR, for U.S.

## OPINION AND ORDER

FUSTE, District Judge.

Defendants, Franklin Méndez–Carrero, Nelson Hernández–Ruiz, and Edwin Nieves–Concepción, are charged with violating 18 U.S.C. § 371 (1994) and 18 U.S.C. § 1029(a)(7) (1994).

Celulares Telefónica, a division of the Puerto Rico Telephone Company, markets Nokia pre-paid cellular telephones that are programmed with subsidy lock codes, a series of numbers which prevent the activation of the unit by another telecommunications carrier. Celulares Telefónica sells these cellular telephones at a price below their market value, in hopes of profiting from the future sale of pre-paid minutes to customers who purchase the telephones. Under normal circumstances, a customer would not be able to use the Nokia pre-paid cellular telephones with any carrier other than Celulares Telefónica due to the subsidy lock codes. However, it is possible for an individual to reprogram the cellular telephones to permit the activation of the units by other telecommunications companies by entering the subsidy lock codes into the telephones.

Nieves–Concepción was employed by Celulares Telefónica as an electronic technician. Hernández–Ruiz owns a store called the Cellular House, located in the Plaza Caribe Mall in Vega Baja, Puerto Rico. Méndez–Carrero owns a store known as Franklin Cellular, which is located in Aguada, Puerto Rico.

Nieves–Concepción obtained Nokia subsidy lock codes from Celulares Telefónica, and sold those codes to Méndez–Carrero. Méndez–Carrero would then sell the subsidy lock codes to Hernández–Ruiz, who used the numbers to reprogram Nokia pre-paid cellular telephones to permit use with another carrier. Individuals who purchased these altered, unlocked telephones were able to use them to make calls through a telecommunications company other than Celulares Telefónica. These customers could purchase pre-paid minutes with other carriers, and they paid for their calls to the company offering services to them.

Defendants are accused of violating 18 U.S.C. § 1029(a)(7), which stipulates: "Whoever ... knowingly and with intent to defraud uses, produces, traffics in, has

control or custody of, or possesses a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services" shall be punished. 18 U.S.C. § 1029(a)(7).

The definition of "telecommunications service" codified in the Communications Act of 1934, 47 U.S.C. § 153 (1994), applies to the present case. *See* 18 U.S.C. § 1029(e)(9). "Telecommunications service" is "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, regardless of the facilities used." 47 U.S.C. § 153(46). "Telecommunications" is defined as "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(43).

■ In 1994, Congress amended 18 U.S.C. § 1029 to prohibit the use of cloned or tumbling cellular phones. *See United States v. Morris,* 81 F.3d 131, 133 (11th Cir.1996). "This section amends the counterfeit access device law to criminalize the use of cellular phones that are altered, or 'cloned,' to allow *free riding* on the cellular phone system." H.R.Rep. No. 103–414, at 31, *reprinted in* 1994 U.S.C.C.A.N. 3489, 3511 (emphasis added). Free riding is the use of cellular telephones to make phone calls, while avoiding being charged for the calls. *See United States v. Brady,* 13 F.3d 334, 336 (10th Cir.1993). Since the intent of Congress was to criminalize free riding by users of cellular telephones, we interpret the phrase "unauthorized use of telecommunications services," as applied in 18 U.S.C. § 1029(a)(7), as meaning the use of cellular phones to make phone calls without being billed for the calls.

" 'Cloning' involves reprogramming the microchip to emit an illegitimately obtained ESN–MIN [Electronic Serial Number–Mobile Identification Number] and thus to charge unauthorized calls to the corresponding account." *United States v. Sepulveda,* 115 F.3d 882, 884 (11th Cir. 1997). "Cloning, which illicitly charges a specific account, is distinct from 'tumbling,' which 'free rides' on the cellular telephone system by emitting random ESN–MINs which are changed before the system can identify them as invalid." *Id.* at 885 n. 3. "A 'tumbling' cellular telephone is one which is capable of randomly changing either the ESN or MIN to enable the user to obtain a 'free ride' through the cellular telephone system by avoiding or defeating access or billing to an individual customer account." *United States v. Yates,* 914 F.Supp. 152, 154 (E.D.Ky.1995).

■ Here, Defendants are not accused of using, producing, trafficking, having control or custody of, or possessing cloned or tumbling cellular telephones. The government has not alleged or proved that Defendants altered cellular phones to allow for the use of the units to make calls while avoiding being billed for the calls. The individuals who purchased the unlocked, altered telephones paid for their calls, albeit to the competitors of Celulares Telefónica who were providing them with services. Although Celulares Telefónica was ultimately unable to profit from selling minutes for their pre-paid cellular phones, there was no free riding, since the customers were being charged for their calls. The altered Nokia telephones were not used to provide unauthorized telecommunications services.

Defendants did not produce or traffic in "a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications services." 18 U.S.C. § 1029(a)(7). In accordance with Rule 29 of the Federal Rules of Criminal Procedure, this court dismisses all charges against Méndez–Carrero. Fed. R.Crim.P. 29.

Hernández–Ruiz and Concepción–Nieves pled guilty to violating 18 U.S.C. § 1029(a)(7). By pleading guilty, Hernández–Ruiz and Concepción–Nieves did not waive any jurisdictional defects to their convictions. *See* Jason Pan & Matthew G. Kaiser, *Thirtieth Annual Review of Criminal Procedure, II. Preliminary Proceedings: Guilty Pleas,* 89 Geo.L.J. 1397, 1409 (2001). The failure of an indictment to state a criminal offense is a jurisdictional defect. *See United States v. Tomeny,* 144 F.3d 749, 751 (11th Cir.1998); *United States v. Ruelas,* 106 F.3d 1416, 1418 (9th Cir.1997); *United States v. Fitzhugh,* 78 F.3d 1326, 1330 (8th Cir.1996). Since the indictment failed to state a violation of 18 U.S.C. § 1029(a)(7), this court did not have jurisdiction over the pending case, and we hereby vacate the pleas of guilty entered by Hernández–Ruiz and Concepción–Nieves. This court dismisses the indictment in its entirety.

This court does not condone Defendants' behavior. Concepción–Nieves was rightfully fired from his employment as an electronic technician at Celulares Telefónica for selling Nokia subsidy lock codes to Méndez–Carrero. Celulares Telefónica may be able to prevail on a civil lawsuit against Defendants. It is possible that Defendants' conduct constituted a violation of the Puerto Rico criminal code. We simply conclude that, based on the facts of this case, Celulares Telefónica's inability to obtain the benefit of its marketing technique did not constitute a violation of 18 U.S.C. § 1029(a)(7). This court does not believe that Congress intended to criminalize Defendants' conduct through its enactment of that statute.

**IT IS SO ORDERED.**