[No. C057152. Third Dist. July 1, 2009.]

COUNTY OF BUTTE et al., Petitioners, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
DAVID WILLIAMS, Real Party in Interest.

## COUNSEL

Bruce S. Alpert, County Counsel, and Brad J. Stephens, Deputy County Counsel, for Petitioners.

Jones & Mayer, Martin J. Mayer and Krista MacNevin Jee for California State Sheriffs' Association, California Police Chiefs' Association and California Police Officers' Association as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Joseph D. Elford for Real Party in Interest.

## OPINION

**RAYE, J.**—Real party in interest David Williams is a qualified medical marijuana patient who uses marijuana upon the recommendation of his physician. Williams belonged to a seven-member collective of medical marijuana patients who agreed to contribute comparable amounts of money, property, and labor to the collective cultivation of marijuana; each then would receive an approximately equal share of the marijuana produced. The marijuana was grown at Williams's home.

In September of 2005 a Butte County Sheriff's deputy came to Williams's home without a warrant. Williams produced copies of medical marijuana recommendations for himself and the other members of the collective. The

deputy ordered Williams, under threat of arrest and prosecution, to destroy all but 12 of the 41 medical marijuana plants. Williams complied.

Williams brought suit, alleging various constitutional violations by defendants Butte County, the Butte County Sheriff's Office, and the deputy involved (collectively, County). County demurred to all causes of action based on a failure to state a cause of action. The trial court overruled the demurrer, rejecting County's argument that Williams could assert his right to grow medical marijuana cooperatively only as a defense in a criminal court. County brought a petition for writ of mandate, and we issued an alternative writ.

In its petition for writ of mandate, County argues the trial court's ruling provides that individuals have a legal right to medical marijuana that can form the basis for a civil lawsuit against law enforcement officers for money damages. County contends this ruling impermissibly expands Proposition 215 and flies in the face of case law. We shall deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Compassionate Use Act—Proposition 215*

Proposition 215, the Compassionate Use Act of 1996 (Act), created Health and Safety Code section 11362.5, which provides that statutes prohibiting possession and cultivation of marijuana "shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (Health & Saf. Code, § 11362.5, subd. (d); all further statutory references are to the Health & Saf. Code.) The Act also states, as one of its purposes: "To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (§ 11362.5, subd. (b)(1)(B).)

The Legislature subsequently passed the Medical Marijuana Program Act (MMPA) to clarify and implement the Act. (Stats. 2003, ch. 875, § 2.) The MMPA added section 11362.77, which specifies an individual may possess no more than eight ounces of dried marijuana and maintain no more than six mature or 12 immature marijuana plants per qualified patient. (§ 11362.77, subd. (a).)

The MMPA also added section 11362.775, providing that qualified patients who associate within the state in order collectively or cooperatively to cultivate marijuana for medical purposes will not be subject to state criminal

sanctions. Section 11362.775 exempts qualified persons "from criminal sanctions for possession for sale, transportation or furnishing marijuana, maintaining a location for unlawfully selling, giving away, or using controlled substances, managing a location for the storage, distribution of any controlled substance for sale, and the laws declaring the use of property for these purposes a nuisance." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 785 [33 Cal.Rptr.3d 859].)

*Williams's Complaint*

Williams's complaint alleged the following facts. Williams, a resident of Butte County, is a qualified medical marijuana patient who uses marijuana on the recommendation of his physician. Does 1 through 4 are also qualified medical marijuana patients who use marijuana on the recommendation of their physicians.

Williams and six other patients formed a seven-member collective. Each member of the collective agreed to contribute comparable amounts of money, property, and/or labor to the collective cultivation of medical marijuana, and each would receive an approximately equal share of the marijuana produced. The marijuana was grown at Williams's home.

On September 8, 2005, Butte County Deputy Sheriff Jacob Hancock came to Williams's home without a warrant. Williams presented Hancock with copies of medical marijuana recommendations for Williams and the six other qualified medical marijuana patients. Williams also informed Hancock that all seven were members of a private patient collective.

Hancock ordered Williams to destroy all but 12 of the 41 medical marijuana plants growing on his property, under threat of arrest and prosecution. Williams complied.

Williams alleged that Hancock's action was undertaken pursuant to the county's policy to allow qualified patients to grow marijuana collectively only if each member actively participates in the actual cultivation of the marijuana by planting, watering, pruning, or harvesting the marijuana.

Williams's complaint alleged (1) violation of the constitutional prohibition against municipal laws that conflict with the California Constitution, (2) unreasonable search and seizure, (3) violation of due process, (4) violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1), and (5) conversion. County demurred to the complaint in its entirety.

*County's Demurrer*

In its demurrer, County argued that if Williams believed he was lawfully cultivating all 41 marijuana plants, his only option under the law was to refuse to remove the plants and to prove the legality of the patient collective in criminal court. Instead, County contends, Williams is attempting to convert the limited defense provided to him under the Act into an affirmative right, allowing him to challenge Hancock's actions and seek civil damages.

In addition, County argued, under the Act a qualified patient may share his marijuana with another qualified patient only if the supplying patient is the primary caregiver of the second patient.

County also filed a motion to strike Williams's complaint. County argued the California Constitution does not authorize a money damages remedy for claims alleging an unreasonable search and seizure.

*The Trial Court's Ruling*

The trial court overruled County's demurrer. The court reviewed the Act and concluded: "[I]t appears that, contrary to the stated policy of the County, the legislature intended collective cultivation of medical marijuana would not require physical participation in the gardening process by all members of the collective, but rather would permit that some patients would be able to contribute financially, while others performed the labor and contributed the skills and 'know-how.' "

The court observed that County, in its demurrer, did not focus on an interpretation of the MMPA, but on its contention that the Act provides a defense in criminal court and nothing more. Under County's theory, Williams's only recourse was to refuse the deputy's order, be arrested, and address the matter in criminal court after criminal charges were brought against him.

The court found County's argument without merit. The court explained: "While it is true that the medical marijuana provisions do not specifically authorize an action by a patient for unlawful seizure of his marijuana, the constitution and laws of the state which otherwise protect the rights of citizens may nevertheless provide an avenue for relief. Thus, if plaintiff can show that he had a legal right to possess the marijuana in question, and that his rights were violated, he may bring his action based on generally applicable legal principles. Seriously ill patients certainly should not be required to risk criminal penalties and the stress and expense of a criminal trial in order to assert their rights. The plaintiff states a theory which would allow a civil

court, rather than the criminal courts, to interpret and determine what constitutes Compassionate Use, who are qualified patients and what cooperative/collective efforts are included under the statute. The civil court appears to be an equally appropriate forum to address the issues of medical patients' rights."

The court did not see any likelihood of inconsistent rulings in this case, since there was no criminal case pending or likely to be brought. In addition, the court rejected County's argument, regarding Williams's search and seizure claim, that the medical marijuana laws do not prohibit police from investigating possible violations of the law. The court concluded: "This is true, however the complaint is based also on the destruction of the marijuana plants, which was directed by the officer on pain of arrest. This could certainly be considered a seizure, and is sufficient to support the cause of action, even without reference to the alleged warrantless search."

The court also denied County's motion to strike. The court found County failed to establish, as a matter of law, that money damages are unavailable: "Because new case authority may be forthcoming, and because the parties have not provided thorough briefing, the court is reluctant to make a final determination at this stage on a matter as to which, at present, there is no clear authority in California."

County filed a petition for writ of mandate.

## DISCUSSION

County argues the Act does not grant individuals immunity from being arrested for marijuana offenses, nor does the Act grant individuals a constitutional right to marijuana. Therefore, the court's assertion that the Constitution and the laws of the state provide an avenue for relief is in error.

According to County, if Williams believed that the deputy did not have probable cause to arrest him, his sole option was to face arrest and then challenge any resulting charges by filing a motion to set aside the indictment or information, or asserting an affirmative defense at trial. The fact that Williams may undergo the expense and stress of criminal proceedings, County contends, is inherent in the process approved by the voters in passing Proposition 215. Therefore, Williams's alleged status as a qualified patient does not provide him standing to pursue a cause of action for conversion, unreasonable search and seizure, due process, or any other civil action.

We disagree with County's assertion that the Constitution and laws of the state do not provide Williams any relief at law. Recently, in *City of Garden*

*Grove v. Superior Court* (2007) 157 Cal.App.4th 355 [68 Cal.Rptr.3d 656] (*Garden Grove*), the appellate court considered whether the police department was required to return lawfully possessed marijuana its officers had seized. The city argued neither the Act, the MMPA, nor section 11473.5 *expressly* provided for the return of lawfully possessed marijuana. However, the court pointed out the city's position failed to recognize "the police cannot retain a person's property without running afoul of basic constitutional consider-ations. . . . 'Continued official retention of legal property with no further criminal action pending violates the owner's due process rights. [Citation.]' " (*Garden Grove, supra*, 157 Cal.App.4th at pp. 386–387.)

The court distinguished a prior decision in which a defendant requested return of a "reasonable amount" of marijuana for medicinal purposes after charges were dismissed in the furtherance of justice because he was already serving time on another case. In the prior case, the defendant was not a qualified user under the Act and not in lawful possession of the marijuana under section 11473.5. Therefore, the marijuana had to be destroyed. (*Garden Grove, supra*, 157 Cal.App.4th at pp. 387–388, citing *Chavez v. Superior Court* (2004) 123 Cal.App.4th 104 [20 Cal.Rptr.3d 21].)

The court reasoned: "Even though state law is silent as to whether a qualified patient like Kha is entitled to the return of his marijuana once criminal charges against him have been dismissed, due process principles seem to us to compel that result. Continued official retention of a qualified patient's marijuana simply cannot be squared with notions of fundamental fairness. The City no doubt has every right to retain a defendant's marijuana if it is pursuing a marijuana-related prosecution against him, or if the defendant's possession does not comport with the [Act]. In those situations, the law clearly contemplates the destruction of the subject marijuana. . . . [¶] But neither of those circumstances exist here. Withholding small amounts of marijuana from people like Kha who are qualified patients under the [Act] would frustrate the will of the people to ensure such patients have the right to obtain and use marijuana without fear of criminal prosecution or sanction. [Citation.] It would also . . . be inconsistent with due process, as well as other provisions of the law that contemplate the return of lawfully possessed property." (*Garden Grove, supra*, 157 Cal.App.4th at p. 388.)

Ultimately, the court in *Garden Grove* determined that because the defend-ant was legally entitled to possess the marijuana, due process and fundamen-tal fairness dictated it be returned to him. (*Garden Grove, supra*, 157 Cal.App.4th at p. 389.) We believe the same considerations of due process and fundamental fairness are operative in the present case.

■ Here, the deputy, without a warrant, ordered Williams, on threat of arrest, to destroy a portion of the medical marijuana plants maintained by the

collective. ■ Article I, section 13 of the California Constitution guarantees individuals the right to be secure in their persons, houses, papers, and effects, free from unreasonable searches and seizures. As the Supreme Court has noted, in the context of medical marijuana: "To be sure, law enforcement officers must have probable cause before they lawfully may arrest a person for any crime. [Citations.] Probable cause depends on all of the surrounding facts [citation], including those that reveal a person's status as a qualified patient or primary caregiver under [the Act]." (*People v. Mower* (2002) 28 Cal.4th 457, 468–469 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*).)

Williams seeks to challenge the deputy's lack of probable cause leading up to the deputy's demand that he destroy numerous marijuana plants. County, citing our opinion in *People v. Fisher* (2002) 96 Cal.App.4th 1147 [117 Cal.Rptr.2d 838] (*Fisher*), argues Williams cannot claim the deputy's lack of probable cause violated his rights. In *Fisher*, officers obtained a search warrant after spotting marijuana growing on the defendant's property. When the officers attempted to execute the warrant, the defendant claimed to be a medical marijuana patient and provided his physician's recommendation. Still believing there remained a possibility a crime was being committed, the officers continued to search and found more marijuana, a weapon, and ammunition. (*Id.* at p. 1149.) A jury convicted the defendant of unlawful possession of the weapon and ammunition, but acquitted him of the marijuana charges. (*Id.* at p. 1150.)

In *Fisher*, the defendant appealed, arguing the trial court erred in denying his motion to suppress all of the evidence because of his status as a medical marijuana patient. We rejected the defendant's argument, noting that when the officers obtained the search warrant, they did so without knowledge of the defendant's status as a medical marijuana patient. When the officers became aware of the defendant's claim, they were unsure whether a crime had been committed and did not have "the option to make a redetermination of probable cause." (*Fisher, supra*, 96 Cal.App.4th at pp. 1150–1151.) Operating under the authority of the warrant, the officers were no longer authorized to make a probable cause determination. (*Ibid.*)

No such warrant and concomitant authority exists in the present case. Here the deputy, without a warrant, ordered Williams to destroy marijuana plants. Lacking a warrant, an officer must possess " ' "facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. . . ." ' [Citation.]" (*Mower, supra*, 28 Cal.4th at p. 473.) Any consideration of probable cause must include the officer's consideration of the individual's status as a qualified medical marijuana patient. (*Id.* at pp. 468–469.)

County argues the Supreme Court opinion in *Mower* completely contradicts the trial court's ruling allowing Williams to bring a civil action based on a violation of his constitutional rights. The Supreme Court in *Mower* determined the Act does not afford qualified medical marijuana patients a complete immunity from arrest because of their status as patients. According to *Mower*, officers must have probable cause before they lawfully arrest a person for any crime. However, the requirement of probable cause does not mean that the Act must be interpreted to grant medical marijuana patients immunity from arrest. Immunity from arrest is exceptional and, when granted, ordinarily is granted expressly. The court found the Act does not expressly grant immunity from arrest. (*Mower, supra*, 28 Cal.4th at pp. 468–469.)

The court further found the language and purpose of the Act granted a defendant a limited immunity from prosecution. This limited immunity allows a defendant to raise his or her status as a qualified patient at trial, and also permits a defendant to raise this status by moving to set aside the indictment or information prior to trial based on a lack of probable cause. (*Mower, supra*, 28 Cal.4th at p. 464.)

County claims *Mower* stands for the proposition that qualified patients may assert a violation of constitutional rights only in the arena of a criminal prosecution. They must refuse to obey an official action, be arrested, and then challenge the officer's determination of probable cause in a motion to set aside the charges. We disagree.

Nothing in *Mower* speaks to the issue of a civil action for violation of a qualified patient's constitutional rights. Here, Williams is not claiming complete immunity from arrest; there was no arrest. Instead, Williams seeks an adjudication as to whether the deputy had probable cause to order Williams to destroy his property, or whether a lack of probable cause led to a violation of his constitutional rights.

Nor are we persuaded by County's argument that Williams fails to present a justiciable controversy, or that allowing the case to proceed will lead to unnecessary disorder and confusion. Without authority, County claims that "Williams' allegations passed the point of ripeness, and were rendered moot, when Williams agreed to remove a portion of the plants." County provides no discussion of this claim and fails to explain why this renders Williams's causes of action based on the search and seizure of his property nonjusticiable.

County also contends it is not within the trial court's field of judicial administration to determine in the abstract whether Williams's actions will

enable him to assert a defense to criminal charges. However, Williams is not asserting a defense; Williams is seeking to challenge an alleged violation of his civil rights in a civil action.

Recently the Supreme Court in *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920 [70 Cal.Rptr.3d 382, 174 P.3d 200] (*Ross*) found an employee who used medical marijuana with a physician's recommendation under the Act and was fired after failing a preemployment drug test could not state a cause of action for termination in violation of public policy. The Act did not speak to employment law or put an employer on notice it would be required to accommodate medical marijuana users.

According to the court: "An employer's refusal to accommodate an employee's use of marijuana does not affect, let alone eviscerate, the immunity to criminal liability provided in the act. We thus give full effect to the limited 'right to obtain and use marijuana' [citation] granted in the act [citation] by enforcing it according to its terms." (*Ross, supra,* 42 Cal.4th at p. 929.)

In the present case Williams's claim does not implicate employment law, property law, or any other discrete branch of the law. Instead, Williams posits causes of action based on his constitutional right to due process, a right growing out of the administration of criminal law, the very subject of the Act.

Nor do we see floodgates opening and lawsuits flooding our burdened court system as a result of Williams's suit. Instead, we see an opportunity for an individual to request the same constitutional guarantee of due process available to all individuals, no matter what their status, under the state Constitution. The fact that this case involves medical marijuana and a qualified medical marijuana patient does not change these fundamental constitutional rights or an individual's right to assert them.

Our dissenting colleague asserts that under federal law "marijuana is just as illegal as cocaine, and therefore is contraband per se . . . ." (Dis. opn., *post*, at p. 743.) Thus, marijuana cannot be lawfully possessed, not even by desperately ill patients who obtain permission to use marijuana for medical purposes; such permission will be useful in a criminal prosecution but is worthless in resisting warrantless intrusions and seizures by law enforcement. This anomalous result, which would surely shock the sensibilities of the voters who approved the initiative measure, is compelled, according to the dissent, because federal law reigns supreme. We disagree.

 We have acknowledged that the Act has no effect on marijuana arrests and prosecutions or searches and seizures under federal law. The many

authorities cited by the dissent on contraband per se all involve property characterized as such under the laws of the seizing jurisdiction. The Act presents the unusual circumstance of a state law that, under limited circumstances, permits the possession of a substance deemed to be contraband under federal law. There are no decisions holding that federal law renders the Act unconstitutional or otherwise unenforceable. Here, the deputy was acting under color of California law, not federal law. Accordingly, the propriety of his conduct is measured by California law. The numerous federal authorities cited by the dissent are without application in the present appeal.

## DISPOSITION

We deny County's petition for a writ of mandate. Having served its purpose, the alternative writ is discharged. Williams shall recover costs in this original proceeding. (Cal. Rules of Court, rule 8.493(a)(1).)

Scotland, P. J., concurred.

**MORRISON, J.,**[*] Dissenting.—I would grant the writ. The fourth amended complaint fails to state a cause of action, and therefore, to avoid a needless trial, the demurrer should have been sustained.

I adhere to the views expressed in *People v. Bianco* (2001) 93 Cal.App.4th 748 [113 Cal.Rptr.2d 392], and in my concurrence in *People v. Tilehkooh* (2003) 113 Cal.App.4th 1433, 1447–1448 [7 Cal.Rptr.3d 226] (*Tilehkooh*), that the United States Congress should reconsider its refusal to amend the federal drug laws to make reasonable accommodation for the 13 states that have enacted some form of compassionate use exception to their penal codes.[1]

The People of California, in exercising their right of initiative, passed the Compassionate Use Act (the CUA) allowing the use of marijuana under physician supervision when it is medically effective, but Congress has not chosen to enact such a law and the United States Supreme Court has held that even such narrow usage obstructs federal law. (*Gonzales v. Raich* (2005) 545 U.S. 1 [162 L.Ed.2d 1, 125 S.Ct. 2195] (*Raich*).)

---

[*]Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Twelve states in addition to California have passed laws in line with the CUA (Compassionate Use Act of 1996; Health & Saf. Code, § 11362.5), generally allowing (so far as state law is concerned) the use of marijuana for medical purposes. (See Alaska Stat. § 17.37.010 et seq.; Colo. Const., art. 18, § 14; Haw. Rev. Stat. § 329-121 et seq.; Me. Rev. Stat. Ann., tit. 22, § 2383-B; Mich. Comp. Laws § 333.26421 et seq.; Mont. Code Ann. § 50-46-101 et seq.; Nev. Rev. Stat. § 453A.010 et seq.; N.M. Stat., ch. 26, art. 2B; Or. Rev. Stat. § 475.300 et seq.; R.I. Gen. Laws § 21-28.6-1 et seq.; Wash. Rev. Code § 69.51A.005 et seq.; Vt. Stat. Ann., tit. 18, ch. 86.)

As I stated in my concurrence in *Tilehkooh,* and as is pointed out in *City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355 [68 Cal.Rptr.3d 656] *(Garden Grove),* peace officers swear to uphold the Constitution and laws of both California and the United States. *(Tilehkooh, supra,* 113 Cal.App.4th at pp. 1447–1448 (conc. opn. of Morrison, J.); *Garden Grove, supra,* 157 Cal.App.4th at p. 391, fn. 15.) Imposing civil liability for an officer who complies with federal law will lead to further confusion surrounding medical marijuana. Judges take the same oath, and the courts should not encourage illegal acts.

Under the laws of the United States, as interpreted by *Raich,* the *only* effect of the CUA is as its terms state: It provides a defense to California *criminal* charges. (See *Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 928–929 [70 Cal.Rptr.3d 382, 174 P.3d 200] *(Ross).*) It does not make marijuana "legal" in any sense.

In this case the CUA is not raised as a shield against criminal charges; it is used as a sword in an attempt to impose civil liability against a peace officer. Allowing this suit to proceed exceeds the proper scope of the CUA, frustrates federal law, requires California courts to validate illegal conduct and needlessly complicates the work of law enforcement. Therefore, I would issue a peremptory writ of mandate.

A.

It is illegal under the federal Controlled Substances Act (CSA; 21 U.S.C. § 801 et seq.) for any private person to possess marijuana. (21 U.S.C.A. §§ 812, schedule I(c)(10), 844(a); see *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 811–812 [81 Cal.Rptr.3d 461] *(NORML).*) This applies to medical marijuana. *(Raich, supra,* 545 U.S. 1.)

Because of the perceived minor nature of marijuana as compared to other drugs and other crimes generally, federal law enforcement agencies rarely investigate or seek prosecution for people who simply possess marijuana. This has led many people and some courts to assume there is no federal interest in preventing marijuana possession, or at least, to act as if that were the case. But such a view can only be based on a crabbed and unfair reading of *Raich,* which held that Congress could properly conclude that allowing "home-consumed marijuana outside federal control would . . . affect price and market conditions," and there was a "likelihood that the high demand in the interstate market will draw [homegrown] marijuana into that market." *(Raich, supra,* 545 U.S. at p. 19.) *Raich* invoked the supremacy clause to rebut a claim that compliance with the CUA took such conduct beyond the reach of Congress. (545 U.S. at p. 29.) "[T]hat the California exemptions will have a

significant impact on both the supply and demand sides of the market for marijuana . . . is readily apparent." (*Id.* at p. 30.) "The exemption for cultivation by patients and caregivers can only increase the supply of marijuana in the California market." (*Id.* at p. 31.)

Therefore, under *Raich*, marijuana, even if grown in the backyards of very ill Californians acting on the advice of their doctors, is illegal. Fostering the cultivation of marijuana in California, regardless of its intended purpose, violates federal law. I disagree with cases holding to the contrary. (E.g., *NORML, supra*, 165 Cal.App.4th at pp. 818–822; *Garden Grove, supra*, 157 Cal.App.4th at pp. 380–386.)

The point where *Garden Grove* goes astray is when it pronounces the possession of marijuana under the CUA "was legal under state law, but illegal under federal law." (*Garden Grove, supra*, 157 Cal.App.4th at p. 377.) The marijuana was not "legal" under state law, because California cannot make "legal" that which Congress makes illegal. Citing *People v. Mower* (2002) 28 Cal.4th 457, 482 [122 Cal.Rptr.2d 326, 49 P.3d 1067], *Garden Grove* stated that the California Supreme Court had determined that "The possession and cultivation [if done under the CUA] become just as lawful as 'the possession and acquisition of any prescription drug.' " (157 Cal.App.4th at p. 372.) But *Garden Grove* mischaracterized the holding of *Mower*: The California Supreme Court instead said "the possession and cultivation of marijuana [under the CUA] *is no more criminal*—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription." (*Mower, supra*, 28 Cal.4th at p. 482, italics added.) *Garden Grove* used "lawful" as a synonym for noncriminal, but there is a difference. That difference was confirmed by the California Supreme Court in *Ross*, holding that the CUA did *not* give "marijuana the same status as any legal prescription drug." (*Ross, supra*, 42 Cal.4th at p. 926.) Instead, it "merely exempted [persons complying with the CUA] from criminal liability under two specifically designated state statutes." (*Ibid.*) This mistake by *Garden Grove* influenced its analysis and led to an erroneous result, authorizing the return of marijuana to a private person, in violation of federal law.

*NORML* goes astray when it asserts the issuance of government identification cards to facilitate marijuana use under the CUA and amending legislation does "not pose a significant impediment to specific federal objectives embodied in the CSA." (*NORML, supra*, 165 Cal.App.4th at p. 826.) The principal objective of the CSA is to eliminate narcotics use, including the use of marijuana. Facilitating the use of marijuana obstructs that objective. A fair reading of *Raich* undermines *NORML*'s analysis and its conclusion.

The CUA states that one of its purposes is "[t]o ensure that seriously ill Californians have the right to obtain and use" medical marijuana. (Health &

Saf. Code, § 11362.5, subd. (b)(1)(A).) While this language can be read broadly to create a protected property interest in marijuana, such interest would be of no effect in light of federal law. And the California Supreme Court has read this language narrowly, holding that the limited " 'right' to obtain and use marijuana created by the [CUA] is the right" to avoid criminal sanctions. (*Ross, supra*, 42 Cal.4th at p. 929.) The CUA did not and could not vest a person with a true "right" to possess marijuana in derogation of the CSA as interpreted in *Raich*. The CUA merely created "a narrow exception to the criminal law." (*Ross*, at p. 929; see *People v. Wright* (2006) 40 Cal.4th 81, 84 [51 Cal.Rptr.3d 80, 146 P.3d 531]; *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 774 [33 Cal.Rptr.3d 859] [CUA "created a limited defense to crimes, not a constitutional right to obtain marijuana"].)

The CSA makes marijuana contraband per se: "Contraband is of two types: contraband *per se* and derivative contraband. Contraband *per se* consists of objects which are 'intrinsically illegal in character,' 'the possession of which, without more, constitutes a crime.' [Citation.] A typical example is cocaine, a controlled substance, the possession of which is unlawful under the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*. Courts will not entertain a claim contesting the confiscation of contraband *per se* because one cannot have a property right in that which is not subject to legal possession." (*Cooper v. City of Greenwood, Miss.* (5th Cir. 1990) 904 F.2d 302, 304–305 (*Cooper*); see *U.S. v. Harrell* (9th Cir. 2008) 530 F.3d 1051, 1057 ["An object is contraband per se if its possession, without more, constitutes a crime; or in other words, if there is no legal purpose to which the object could be put."].)

Under the supreme law of the land, marijuana is just as illegal as cocaine, and therefore is contraband per se: "The following shall be subject to forfeiture to the United States and no property right shall exist in them: [¶] (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter. [¶] . . . [¶] (8) All controlled substances which have been possessed in violation of this subchapter." (21 U.S.C.A. § 881(a).) In part the CSA defines what may be subject to forfeiture, but it also declares that "no property right shall exist" in, among other things, specified substances including marijuana. Federal law is supreme, making marijuana contraband per se even in California.

The distinction between contraband per se and derivative contraband is critical because due process attaches to *lawful* property and to property whose status must be ascertained, such as derivative contraband, that is, property "not inherently illegal to possess." (16D C.J.S. (2005) Constitutional Law, § 1850, p. 192; see *People v. Superior Court (McGraw)* (1979) 100 Cal.App.3d 154, 159 [160 Cal.Rptr. 663] ["if the contraband nature of seized property is in doubt, there should be an appropriate procedure for making that determination"].)

But neither tort liability nor due process rights arise from the seizure or destruction of contraband per se.

As for tort liability, it has long been the rule that a conversion action "will not lie for property which can only be possessed in violation of law." (Bowers, A Treatise on the Law of Conversion (1917) When Subjects of Conversion, § 38, p. 29 (Bowers).) Such property cannot be returned and the possessor cannot maintain an action for damages. (*Aday v. Superior Court* (1961) 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47] ["if any of the property seized other than the named books was contraband, petitioners are not entitled to its return"]; *Plymouth Sedan v. Pennsylvania* (1965) 380 U.S. 693, 699 [14 L.Ed.2d 170, 85 S.Ct. 1246] ["The return of the contraband would clearly have frustrated the express public policy against the possession of such objects."]; *Boggs v. Rubin* (D.C. Cir. 1998) 333 U.S. App.D.C. 138 [161 F.3d 37, 40] [" '[I]ndividuals have no property right in contraband materials and contraband materials may not be returned to them.' "]; *Cooper, supra,* 904 F.2d at pp. 304–305; *U.S. v. Bagley* (8th Cir. 1990) 899 F.2d 707, 708 [" 'to allow [Bagley] to reap the economic benefit from ownership of weapons [] which it is illegal for him to possess would make a mockery of the law' "]; *Stanley-Thompson Liquor Co. v. People* (1917) 63 Colo. 456, 458 [168 P. 750, 751] ["things which are capable of no use for lawful purposes . . . are not the subject of property. They cannot be recovered in replevin, nor will damages be given for their loss or injury"]; *Miller v. Chicago & N.W. Ry. Co.* (1913) 153 Wis. 431, 434 [141 N.W. 263, 264] ["courts will not regard such value as a legitimate measure of damages to be recovered, where the article is destroyed. And where the implement has no value for any lawful purpose no damages in a case of this kind are recoverable"]; *Oviatt v. Pond* (1861) 29 Conn. 479 [liquor kept for illegal purpose deemed to have no value]; Comment, Intoxicating Liquor as the Subject of Larceny: Public Policy: The National Prohibition Act (1923) 11 Cal. L.Rev. 369, 370 (Comment) ["there may be no recovery against the government for confiscation. Nor may the 'possessor' sue for the value when the [illegal] goods are taken from him by a private citizen" (fn. omitted)], cf. *U.S. v. Seifuddin* (9th Cir. 1987) 820 F.2d 1074, 1078–1079 [person convicted of felony whose firearms were later seized may be able to recoup their value because firearms are not contraband per se]; *U.S. v. McCormick* (9th Cir. 1974) 502 F.2d 281, 288 [automobile, *unlike narcotics,* is not contraband per se].)

Under settled common law principles, there can be no tort liability for the destruction of contraband per se.

Nor does the seizure and destruction of contraband per se offend due process principles. Due process protects *lawful* property interests: " 'There can be no forfeiture of property without notice to the owner and a hearing at

which he can be heard, except in a few cases of necessity, i.e., *property kept in violation of law which is incapable of lawful use.*' " (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286 [231 P.2d 832], italics added; see *Net Forfeiture*, 63 Ops.Cal.Atty.Gen. 346, 354 (1980) [no need for notice "where the property is contraband (i.e., illegal to possess), has no lawful use, or constitutes a danger to the public safety"].) No prior hearing is required, as to contraband per se. (See *Samuels v. McCurdy* (1925) 267 U.S. 188, 199–200 [69 L.Ed. 568, 45 S.Ct. 264]; cf. *Logan v. Zimmerman Brush Co.* (1982) 455 U.S. 422, 433–434 [71 L.Ed.2d 265, 102 S.Ct. 1148] [some type of hearing required for "protected property interest"].)

There are two narrow legal interests that are implicated by contraband per se, but neither has any application to the facts alleged in this case. First, a possessor of contraband per se has the right to challenge the lawfulness of its seizure in a criminal case. (See *United States v. Jeffers* (1951) 342 U.S. 48, 52–54 [96 L.Ed. 59, 72 S.Ct. 93] [fact no property rights existed in narcotics did not preclude application of exclusionary rule, but did preclude return of narcotics to the owner].) But David Williams, real party in interest here, was not prosecuted.

Second, contraband per se is treated as property for purposes of imposing criminal liability for theft and related crimes, as a matter of public policy. (See *People v. Dillon* (1983) 34 Cal.3d 441, 456–457 & fn. 5 [194 Cal.Rptr. 390, 668 P.2d 697] [taking standing marijuana can support robbery charge]; *People v. Walker* (1939) 33 Cal.App.2d 18, 20 [90 P.2d 854].) In several recent cases, armed criminals have robbed or attempted to rob persons of medical marijuana. The same thing happened during Prohibition. (Comment, *supra*, 11 Cal. L.Rev. 369 ["The daily newspapers of recent months have contained many notices of daring raids and housebreakings for the purpose of carrying away intoxicating liquor."].) Such persons are properly prosecuted for their crimes, but this does not confer any property rights on their victims.

Had Deputy Hancock been accompanied by a federal agent who ordered the destruction, no suit would lie. (See *Raich, supra*, 545 U.S. at p. 7 [as to one party, "federal agents seized and destroyed all six" plants].) And Deputy Hancock had no legal duty to refrain from seizing and destroying all of the plants. Nothing in the complaint suggests his direction to Williams to destroy the plants was unreasonable *apart from* Williams's view that he had the right to grow marijuana. So, how has Deputy Hancock subjected himself and his department to possible liability? *Garden Grove* unfairly discounted the practical effects of its holding, that medical marijuana is protected property, to the day-to-day realities faced by state law enforcement, and this lawsuit shows why.

Compensating Williams for the purported value of the destroyed marijuana would assure growers of marijuana that the courts of California will protect their crops. This obstructs the federal policy adopted by Congress in the CSA as interpreted and upheld by the United States Supreme Court in *Raich*.

Medical marijuana users under the CUA do have some administrative protection for their marijuana. The California Attorney General, the "chief law officer of the State" (Cal. Const., art. V, § 13), has issued a bulletin that "recommends that state and local law enforcement officers not arrest individuals or seize marijuana under federal law when the officer determines from the facts available that the cultivation, possession, or transportation is permitted under California's medical marijuana laws." (Cal. Dept. of Justice, Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use (Aug. 2008) p. 4.) This is a sensible position, and presumably local law enforcement agencies will adopt appropriate policies and training programs. But it is only in benign forbearance that medical marijuana users are protected. They do not have any "right" to sue to protect their marijuana until federal law is changed.

## B.

The fourth amended complaint alleges Williams "collectively cultivates marijuana" with other people at his residence. Deputy Jacob Hancock, while on duty and without a warrant, ordered Williams to destroy some but not all of the marijuana plants, and Williams did so. Williams would like to continue with the collective, but feels deterred lest he again be forced to destroy marijuana plants after investing time and energy in growing them.

The complaint alleges the Butte County Sheriff has adopted a policy limiting the way in which a collective can operate, specifically, that it can be done only if each member is an active participant in the actual cultivation. Later the complaint refers to this as an "underground" policy.[2]

The complaint is divided into five claims, styled as separate causes of action, as follows.

1. Williams contends the alleged underground policy conflicts with Health and Safety Code section 11362.775, and he is therefore entitled to declaratory and injunctive relief. I disagree. That statute provides in full: "Qualified patients, persons with valid identification cards, and the designated

---

[2] In *People v. Mentch* (2008) 45 Cal.4th 274 [5 Cal.Rptr.3d 480, 195 P.3d 1061], the California Supreme Court held that a person who only supplies marijuana and instructs on its use cannot qualify as a primary caregiver under the CUA.

primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." (Health & Saf. Code, § 11362.775.)

The alleged underground policy, as described in the complaint, does not impose any criminal sanction; therefore, it does not conflict with this statute. The destruction of property as alleged in the complaint was not a criminal sanction. Therefore the complaint fails to allege that the underground policy conflicts with state law.

Technically, a party seeking declaratory relief is entitled to a declaration of rights, even if the court concludes he or she has no rights. But it has been held that an appellate decision explaining why a party has no rights suffices. (See *Savient Pharmaceuticals, Inc. v. Department of Health Services* (2007) 146 Cal.App.4th 1457, 1464 [3 Cal.Rptr.3d 689].) Therefore this claim does not warrant denying the writ.

2. Williams alleges an unreasonable search and seizure. Williams alleges Deputy Hancock wrongly ordered Williams to destroy the marijuana and remained "after there was no longer any probable cause to believe that [Williams] had committed any state law crime." There is no claim the search was otherwise unreasonable, for example, that the marijuana was being grown inside the house, rather than in plain sight, or any other claim of wrongful conduct by Deputy Hancock. The facts alleged show that Deputy Hancock ordered the destruction of some, but not all, of the contraband he found on Williams's property. The complaint does not allege any facts showing any actionable wrongdoing because the property destroyed was of no legal value and suit may not be maintained for its destruction, as stated above.

3. Williams sought declaratory and injunctive relief, not damages, based on state due process principles. The relevant portion of the California Constitution provides: "A person may not be deprived of life, liberty, or property without due process of law . . . ." (Cal. Const., art. I, § 7, subd. (a).) The deprivation of "property" without a hearing is a violation of this section. (See *Hughes v. Neth* (1978) 80 Cal.App.3d 952, 960 [146 Cal.Rptr. 37]; *Modern Loan Co. v. Police Court* (1910) 12 Cal.App. 582, 585 [108 P. 56]; see 7 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, §§ 678–679, pp. 1097–1098 [subsequent hearing may protect property interest].) Virtually anything anyone can *legitimately* possess, transfer or acquire may be protected property. (See *Traverso v. People ex rel. Dept. of*

*Transportation* (1993) 6 Cal.4th 1152, 1160 [26 Cal.Rptr.2d 217, 864 P.2d 488].) However, marijuana is not protected property.

The California due process clause, however, does not necessarily turn on the existence of a property or liberty interest, as does the federal due process clause. Our state due process clause also protects a dignity interest, the right to be free from "arbitrary adjudicative procedures." (*People v. Ramirez* (1979) 25 Cal.3d 260, 264 [158 Cal.Rptr. 316, 599 P.2d 622]; see *id.* at pp. 267–269.) But when examined, the difference is small, and the state law " 'claimant must nevertheless identify a statutorily conferred benefit or interest of which he or she has been deprived to trigger procedural due process under the California Constitution and the *Ramirez* analysis of what procedure is due.' " (*Gresher v. Anderson* (2005) 127 Cal.App.4th 88, 105 [25 Cal.Rptr.3d 408]; see *id.* at p. 106; *Nichols v. County of Santa Clara* (1990) 223 Cal.App.3d 1236, 1247 [273 Cal.Rptr. 84] [no hearing needed when concealed weapons permit was revoked, in part because dignity interest was satisfied when holder was told of the reason for the decision].) Here, the only "statutorily conferred" benefit is the right to be free of criminal sanctions, and to the extent the CUA can be read to confer some property interest in marijuana, it conflicts with federal law, which is the controlling law. Thus, the allegations do not plead the violation of any protected "dignity interest."

4. Williams alleged the conduct described above violated the Bane Act, Civil Code section 52.1.

Subdivision (b) of Civil Code section 52.1 provides that "Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a)," may sue. Subdivision (a) generally provides liability where "a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."

The only "right" conferred by the CUA is immunity from prosecution, and Williams was not prosecuted. Although the CUA may be read broadly to grant property interests, as a matter of federal law it cannot. Further, the California Supreme Court has not read the CUA so broadly. (*Ross, supra*, 42 Cal.4th at pp. 928–929.)

5. Finally, Williams attempts to state a claim for conversion. A necessary component of such a claim is that the property taken has cognizable value. Contraband per se has no such value. (Bowers, *supra*, § 38, p. 29.)

## C.

As interpreted by the United States Supreme Court, federal narcotics laws make marijuana contraband per se, regardless of the medical marijuana laws. There is no viable cause of action in the fourth amended complaint. There is no suggestion that the trial court should have granted leave to file a *fifth* amended complaint; therefore, the demurrer should have been sustained without leave to amend. Because there is no reason to subject the parties to the cost of a needless trial, I would issue a peremptory writ of mandate.

Petitioners' petition for review by the Supreme Court was denied September 23, 2009, S175219. Werdegar, J., did not participate therein. Baxter, J., and Chin, J., were of the opinion that the petition should be granted.